Matter of McMillan (2018 NY Slip Op 05311)





Matter of McMillan


2018 NY Slip Op 05311


Decided on July 18, 2018


Appellate Division, Second Department


Per Curiam.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on July 18, 2018
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

ALAN D. SCHEINKMAN, P.J.
WILLIAM F. MASTRO
REINALDO E. RIVERA
MARK C. DILLON
JOSEPH J. MALTESE, JJ.


[*1]In the Matter of Laurence B. McMillan, admitted as Laurence Benet McMillan, an attorney and counselor-at-law. Grievance Committee for the Tenth Judicial District, petitioner; Laurence B. McMillan, respondent. (Attorney Registration No. 1036276)



DISCIPLINARY PROCEEDING instituted by the Grievance Committee for the Tenth Judicial District. By decision and order on motion of this Court dated August 24, 2016, the Grievance Committee was authorized to institute and prosecute a disciplinary proceeding against the respondent based on the acts of professional misconduct set forth in a verified petition dated January 28, 2016, the respondent was barred from relitigating any of the factual issues raised in charges one through five of the petition based on the doctrine of collateral estoppel, and the issues raised were referred to the Honorable Geoffrey O'Connell, as Special Referee, to hear and report. By decision and order on motion of this Court dated February 23, 2017, the Honorable Geoffrey O'Connell was relieved as Special Referee and the matter was reassigned to the Honorable Elaine Jackson Stack. The respondent was admitted to the Bar at a term of the Appellate Division of the Supreme Court in the Second Judicial Department on August 6, 1974, under the name Laurence Benet McMillan.



Catherine A. Sheridan, Hauppauge, NY (Robert H. Cabble of counsel), for petitioner.
Roger S. Wareham, Brooklyn, NY, for respondent.



PER CURIAM.


OPINION & ORDER
The Grievance Committee for the Tenth Judicial District served the respondent with a petition dated January 28, 2016, containing 10 charges of professional misconduct. After a prehearing conference on April 20, 2017, and a hearing on June 6, 2017, the Special Referee sustained all the charges. The Grievance Committee now moves to confirm the report of the Special Referee and for the imposition of such discipline upon the respondent as the Court deems just and proper. In response, the respondent has submitted an [*2]affirmation wherein he accepts the findings of the Special Referee with respect to all 10 charges, but wishes to make objections or corrections to several assertions made by the Special Referee and the Grievance Committee, and asks for the imposition of an admonition, censure, or a six-month suspension.
Charges One to Six (Estate Matter)
Charge one alleges that the respondent engaged in conduct that adversely reflects on his fitness as a lawyer, in violation of former Code of Professional Responsibility DR 1-102(a)(7) (22 NYCRR 1200.3[a][7]) and/or rule 8.4(h) of the Rules of Professional Conduct (22 NYCRR 1200.0), as follows: the respondent's sister, Elizabeth Baillergeau, commenced an action against the respondent and his wife, Doloures Denise Codrington McMillan, entitled Baillergeau v McMillan (2012 WL 266389, 2012 Conn Super LEXIS 61 [Conn Super Ct, No. CV105029202S], affd 143 Conn App 745, 72 A3d 70) in the Superior Court of Connecticut, Judicial District of Fairfield at Bridgeport. Baillergeau alleged, inter alia, that while acting as administrator of their deceased mother's estate, the respondent failed to distribute Baillergeau's share of the proceeds of the estate, breach of constructive trust, and conversion of the bequested funds. Baillergeau also alleged that a quitclaim deed executed and delivered by the respondent to his wife, transferring his interest in a real estate property located at 716 School Drive in Baldwin (hereinafter the 716 house) for $10, was a fraudulent transfer, designed to avoid his obligation to pay Baillergeau her inheritance.
After a nonjury trial, in a memorandum decision filed January 10, 2012, the Superior Court made findings of fact and conclusions of law, rendering judgment in favor of Baillergeau and against the respondent in the principal sum of $108,902, plus prejudgment interest in the sum of $46,991, for a judgment in the total sum of $155,893 (see 2012 WL 266389, 2012 Conn Super LEXIS 61). The Superior Court set aside the transfer of the deed to the 716 house and ordered the respondent and his wife to restore title to the 716 house to the respondent within 30 days. The respondent and his wife appealed this judgment and subsequent "judgments of the [Superior Court] denying their motions to open and reargue the underlying judgment" to the Appellate Court of Connecticut, which consolidated the appeals, and affirmed the judgments in a decision released July 2, 2013 (see Baillergeau v McMillan, 143 Conn App 745, 72 A3d 70).
The Superior Court and Appellate Court made the following findings of fact and conclusions of law:
Kathryn D. McMillan (hereinafter Kathryn), the mother of the respondent and Baillergeau, was a teacher in the Stratford, Connecticut, school system until she retired in the late 1970s and joined the Peace Corps. When Kathryn retired, she owned her house in Stratford (hereinafter Kathryn's house), maintained a savings account, and received retirement income deposited into a checking account. Before going to Africa to serve with the Peace Corps, Kathryn arranged for the respondent to have his name placed both on her savings and checking accounts. The respondent also had access to other funds belonging to Kathryn through a power of attorney. The respondent repeatedly testified that Kathryn's only instructions were that he was to treat Baillergeau equally and share everything with her. "The defendant [respondent], however, had other ideas" (2012 WL 266389, *2, 2012 Conn Super LEXIS 61, *4).
While Kathryn was in Africa, the respondent systematically withdrew from her checking and savings accounts tens of thousands of dollars for his personal use, as well as other funds that he testified he had obtained with the power of attorney. From the money he withdrew, the respondent used $20,000 to purchase a house located at 722 School Drive in Baldwin, New York (hereinafter the 722 house).
The Superior Court found that:
"In explaining why he ignored his mother's instructions and failed to turn any of the [*3]monies over to his sister or file an accounting for the probate court, he testified that it was legal because his name was on the title. He testified that he did not account to the probate court because most of the withdrawals took place before the mother had passed away, were inter vivos and not listed by him as a claim of the estate. The monies he took after she passed away he claimed were legal because the accounts were in survivorship.
"Apparently, the defendant [respondent] was not concerned that he may have violated his Fiduciary Duty As Attorney. As well as the Fiduciary Duty of Loyalty which is breached when a fiduciary engages in self-dealing by using the fiduciary relationship to benefit his personal interest"(2012 WL 266389, *2, 2012 Conn Super LEXIS 61,*4-5 [citation omitted], quoting Mangiante v Niemier, 82 Conn App 277, 284, 843 A2d 656, 660)."
Kathryn returned from the Peace Corps, but, due to dementia, she was confined to a nursing home until her death on April 25, 2006. Prior to Kathryn's death, the respondent took funds from her account to upgrade Kathryn's house for an intended sale.
On June 26, 2006, the respondent was appointed administrator of Kathryn's estate by the Stratford Probate Court. No claims were listed for or against the estate. The principal asset of the estate was Kathryn's house. The respondent obtained authorization to sell Kathryn's house for $345,000, and sold it on August 10, 2007. Thereafter, the respondent ignored repeated requests from the probate court for payment of probate fees and the filing of an accounting. The probate court appointed a successor administrator, who, among other things, filed a claim against the respondent.
On February 6, 2009, the respondent filed a statement in lieu of account with the probate court. Although the May 24, 2007, application seeking approval for the sale of Kathryn's house indicated a sales price of $345,000, the statement indicated a sales price of $320,000. In the statement, the respondent advised the probate court that each of the heirs, himself and Baillergeau, was entitled to a distribution of $120,902, after deductions for closing expenses. The Superior Court found that the respondent "actually represented in the account that the distribution had been made, which was untrue" (2012 WL 266389, *3, 2012 Conn Super LEXIS 61, *6).
The Superior Court found that the balance sheet submitted by the respondent for the checking account of Kathryn's estate listed disbursements to Baillergeau in the amounts of $3,000, $5,000, and $10,000. Baillergeau admitted that she received some funds from the respondent, and the Superior Court allowed a credit to the respondent in the sum of $18,000. The Superior Court found that the respondent was still obligated to distribute the sum of $108,902 to Baillergeau.
In April 2009, Baillergeau began living in a house in Hempstead, New York (hereinafter the Hempstead house) that was owned by the respondent's wife. There were discussions among the respondent, the respondent's wife, and Baillergeau that, at an indeterminate date in the future, Baillergeau would purchase the Hempstead house from the respondent's wife. However, there was no contract or agreed-upon sale price. Meanwhile, Baillergeau rented the Hempstead house for approximately three years. Baillergeau alleged, and the respondent and his wife admitted that they were aware, that the down payment for Baillergeau's purchase would come from her share of the inheritance from Kathryn's estate.
The Superior Court found that, while Baillergeau occupied the Hempstead house, she inquired of the respondent every two months as to when she was to receive her inheritance, but the respondent misrepresented to her that matters were being delayed by legal complications. Baillergeau eventually decided against purchasing the Hempstead house. The respondent sought a setoff of $14,950 for alleged damages arising from Baillergeau's occupancy and failure to purchase. [*4]The Superior Court denied the setoff, finding that the respondent had submitted insufficient proof, and stating:
"Of more significance, is the only reason there was never any closing was not the fault of [Baillergeau], but it was [the respondent's] continued and total disregard of his legal and moral obligation to [Baillergeau] with respect to distributing her inheritance which was a condition under which she agreed to purchase the property. After three years of continued promises, [Baillergeau] was certainly entitled to move on" (2012 WL 266389, *4, 2012 Conn Super LEXIS 61, *10-11).
The Superior Court denied Baillergeau's claim of a constructive trust on the 722 house. However, the Superior Court found that the respondent's transfer of his interest in the 716 house to his wife and son, Simeon McMillan (hereinafter the respondent's son), was a fraudulent transfer. The Superior Court determined as follows:
"The [respondent] never offered any explanation as to what happened to the proceeds of the estate. Based on the testimony of his wife, Doloures McMillan, [the respondent] is insolvent. While the court finds the testimony of the defendant, Doloures McMillan, was credible and that she had a valid reason to divest any interest [the respondent] may have in their residence, the court finds there was a more overriding purpose.
"For years, [Baillergeau] had been asking for her inheritance and the [respondent] had been able to mislead [Baillergeau] into thinking there was some unnamed legal impediment. In November of 2009 [Baillergeau] finally hired a lawyer and at that time the [respondent] and Doloures McMillan received two letters from the attorney. One month later the quit-claim deed was executed.
"Connecticut General Statutes § 52-552f provides the following: (a) the transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at the time or the debtor became insolvent as a result of the transfer or the obligation.'
"The court finds that the quit-claim deed executed in December of 2009 by the [respondent] to the defendant, Doloures McMillan, was a fraudulent transfer to avoid a creditor. The transfer is set aside and the [respondent and his wife] are ordered to restore title to the [respondent] within thirty days" (2012 WL 266389, *5-6, 2012 Conn Super LEXIS 61, *13-14).
The Superior Court rendered a judgment in January 2012 (hereinafter the January 2012 judgment) against the respondent in the principal sum of $108,902, plus prejudgment interest [*5]to the date of the judgment in the sum of $46,991 for a judgment in the total sum of $155,893. The respondent was also found liable for postjudgment interest pursuant to statute. To date, the respondent has failed to pay or satisfy the January 2012 judgment.
The respondent and his wife appealed the January 2012 judgment, and "the subsequent judgments of the trial court denying their motions to open and reargue the [January 2012] judgment." The Appellate Court of Connecticut affirmed the judgments (see Baillergeau v McMillan, 143 Conn App 745, 72 A3d 70).
The Appellate Court rejected the respondent's argument that the January 2012 judgment should be opened to allow for correction of the Superior Court's misapprehension of the language of the quitclaim deed, which recited other valuable consideration given for the transfer of the respondent's interest in the 716 house, and the testimony of the respondent and his wife regarding the circumstances of the transfer and the other valuable consideration allegedly given in exchange for the respondent's interest in the house. The Appellate Court found that the "[respondent and his wife] did not assert that [their] proffered documentation was newly discovered; rather, they simply asserted that they had compiled documents to correct the court's purported misapprehension of the nature of the consideration" (143 Conn App at 754, 72 A3d at 75). In rejecting the argument, the Appellate Court held, in relevant part, that:
"Because this argument is effectively nothing more than an attempt to have an impermissible second bite of the apple with respect to the court's determination regarding the circumstances of the transfer of 716 School Drive, the court did not abuse its discretion in denying the [motions of the respondent and his wife]" (143 Conn App at 754, 72 A3d at 75).
The Appellate Court further noted:
"To the extent that the [respondent and his wife] have asserted that the trial court ignored and/or assigned improper weight to certain of the evidence before it at trial, we note that it is well settled that determinations as to credibility and weight of the evidence are within the sole province of the trial court as the finder of fact" (143 Conn App at 754 n 2, 72 A3d at 75 n 2).
The Appellate Court declined to review the argument that the Superior Court overlooked Connecticut General Statutes § 52-552b(2) because the claim was not sufficiently presented to the Superior Court. The Appellate Court also declined to consider the argument that CPLR 5206(a) exempts the value of the respondent's interest in the 716 house from the satisfaction of a money judgment in Baillergeau's favor, and that the Superior Court improperly failed to set a limit on the amount of a lien Baillergeau could file against the respondent's property, because this argument was raised for the first time on appeal in a reply brief. In addition, the Appellate Court declined to review, because it was not presented to the Superior Court, the argument that the portion of the order requiring restoration of the title to the 716 house to the respondent cannot be enforced because the respondent's son was never made a party to the litigation or otherwise appeared in the matter; therefore, the Superior Court had no jurisdiction over him and could not enforce the judgment against him. The Appellate Court did note as follows:
"We acknowledge that effectuating the order of the trial court setting aside the transfer of [the respondent's] interest in 716 School Drive, which we affirm, will require Doloures McMillan to convey her interest in that property to [the respondent] and will not affect the [*6]interest of Simeon McMillan, who is not a party to the underlying action. After the court-ordered transfer, the title to 716 School Drive will be held by [the respondent] and Simeon McMillan as joint tenants" (143 Conn App at 758 n 6, 72 A3d at 77 n 6).
Charges two and three allege that the respondent engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation, and conduct prejudicial to the administration of justice, in violation of former Code of Professional Responsibility DR 1-102(a)(4) and (5) (22 NYCRR 1200.3[a][4], [5]) and rule 8.4(c) and (d) of the Rules of Professional Conduct (22 NYCRR 1200.0), respectively, in his capacity as administrator of Kathryn's estate, by falsely advising Baillergeau, a cobeneficiary of the estate, that there were legal impediments to distributing her share of the estate; falsely informing the probate court in a statement in lieu of account that he distributed Baillergeau's share of Kathryn's estate; and conveying his interest in real property held by him and his wife as tenants by the entirety for no consideration, in order to evade his fiduciary obligations as administrator of Kathryn's estate to pay to Baillergeau her share of the inheritance and to thereafter avoid satisfying her judgment obtained against him, based on the factual allegations set forth in charge one.
Charge four alleges that the respondent made a false statement of fact or law to a tribunal or failed to correct a false statement of material fact or law previously made to the tribunal, in violation of former Code of Professional Responsibility DR 7-102(a)(5) (22 NYCRR 1200.33[a][5]) and rule 3.3(a)(1) of the Rules of Professional Conduct (22 NYCRR 1200.0), by falsely stating to the probate court in a statement in lieu of account that he had distributed to Baillergeau her share of the inheritance, based on the factual allegations set forth in charge one.
Charge five alleges that the respondent misappropriated funds held by him in a fiduciary capacity as administrator of Kathryn's estate, in violation of former Code of Professional Responsibility DR 9-102(a) (22 NYCRR 1200.46[a]) and rule 1.15(a) of the Rules of Professional Conduct (22 NYCRR 1200.0), based on the factual allegations set forth in charge one.
Charge six alleges that the respondent engaged in conduct prejudicial to the administration of justice, in violation of former Code of Professional Responsibility DR 1-102(a)(5) (22 NYCRR 1200.3[a][5]) and rule 8.4(d) of the Rules of Professional Conduct (22 NYCRR 1200.0), by failing to satisfy the Connecticut judgment obtained against him by Baillergeau, based on the factual allegations set forth in charge one.
Charges Seven through Ten (Escrow Account)
Charge seven alleges that the respondent engaged in conduct that adversely reflects on his fitness as a lawyer, in violation of rule 8.4(h) of the Rules of Professional Conduct (22 NYCRR 1200.0), as follows: At all relevant times, the respondent maintained an attorney IOLA escrow account at JPMorgan Chase Bank, and also maintained an operating or business account. The Grievance Committee initiated a sua sponte complaint against the respondent based on a dishonored check report from the Lawyers' Fund for Client Protection pertaining to his IOLA account. By letter dated February 3, 2014, the respondent was requested to submit an answer with an explanation setting forth the circumstances which caused the check to be dishonored, and to provide bank statements and other relevant account records.
In an answer dated March 18, 2014, the respondent stated:
"The opening balance as of June 1, 2013 ($1,525.26) represents funds that remained from payments I received from clients during the prior period. None of this represents funds to have been formally held in escrow." . . . As you are aware, I was a defendant in a legal proceeding in Connecticut which is the subject of another matter under your [*7]review. As a result of this proceeding a judgment was entered against me. Concerned there may have been collection proceedings against me, I directed my monthly social security payments to be made to the Account. Based on my consistently making monthly payments towards this judgment, I believe no collection action will be taken against me at this time. Therefore I have directed the Social Security Administration to deposit my monthly payments into my personal account. As of June 1, no direct Social Security payments will be made to the Account."
The account records provided by the respondent for the period June 1, 2013, through December 31, 2013, showed that he deposited on a monthly basis his personal social security payments in the amount of $1,504 into his IOLA account. The account records also showed that there were 27 instances of the respondent depositing legal fees into his IOLA account; that, with respect to numerous deposits, the respondent failed to properly describe deposits, identify the sources of the deposits, and the clients for whom the funds were received or held; and that with respect to 93 withdrawals and disbursements, failed to render appropriate accounts, and records for, the payees and purposes of withdrawals or disbursements, and the corresponding deposits.
Charges eight and nine allege that the respondent engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation, and conduct prejudicial to the administration of justice, in violation of rule 8.4(c) and (d) of the Rules of Professional Conduct (22 NYCRR 1200.0), respectively, by using his IOLA account to shield personal funds and legal fees from a judgment creditor, based on the factual allegations set forth in charge seven.
Charge ten alleges that the respondent commingled funds of his own with funds belonging to other persons in his IOLA account, in violation of rule 1.15(a) of the Rules of Professional Conduct (22 NYCRR 1200.0), based on the factual allegations set forth in charge seven.
While the respondent does not contest the charges, he does raise several objections or corrections to various assertions by either the Special Referee in her report or the Grievance Committee in its motion. The respondent's principal objection concerns the quitclaim deed, which he continues to maintain was not a fraudulent transfer. In support of his contention, the respondent has submitted new evidence. We find that, not only is it improper for the respondent to submit new evidence to support his contention, but he is barred under the doctrine of collateral estoppel from relitigating the issue. There is no merit to the respondent's remaining objections or corrections.
The respondent was previously admonished in 1992 for, inter alia, neglect of a client matter. He was also suspended for failure to re-register as an attorney in 1998 by the Appellate Division, First Department (see Matter of Attorneys in Violation of Judiciary Law § 468-a, 247 AD2d 158), and subsequently reinstated to the practice of law in 2000 (see Matter of Attorneys in Violation of Judiciary Law § 468-a [McMillan], 271 AD2d 231).
The respondent asks that the Court impose a light sanction based on the following mitigating factors: he is remorseful and accepts responsibility for the harm he caused Baillergeau; the misuse of funds is an isolated occurrence in a relatively unblemished 40-year legal career; he is paying Baillergeau $1,000 per month, not $500, for a total amount, to date, of $50,000; he has had his wife reconvey to him his interest in the 716 house; the dispute is simply a "family affair," and his motives, while paternalistic, were not venal; he has cooperated with the Grievance Committee's investigation; he serves as an elder in his church and is a member of its governing board; and he enjoys a reputation in the community as a person of honesty and integrity.
As far as mitigation, the Special Referee noted that the respondent was remorseful and had not denied culpability and responsibility, although she found it inconsistent for him to claim, on the one hand, that he lacked knowledge of the rules governing escrow accounts, yet, at the same time, acted on knowledge that escrow funds are immune from collection. The Special Referee duly [*8]noted the letters submitted in support of the respondent's character, in particular, his financial acumen, except that she found it difficult to resolve the inconsistency between the respondent's financial acumen and his inability to produce records of deposits and withdrawals. The Special Referee concluded:
"Respondent has presented himself as a naif, unsophisticated in his understanding of ethical concepts, a poor financial record keeper, working diligently to repay his sister an inheritance he essentially stole from her. One cannot help but recognize that his payment of the debt of over $155,000, with interest accruing at 8%, is being repaid at the rate of about $500 per month. Neither respondent nor his sister will live long enough for this debt to be paid in full."
Notwithstanding the mitigating factors present in this case, we find that the respondent's misconduct is grave and warrants a severe sanction. The respondent engaged in a course of conduct to deprive Baillergeau of her rightful share of her inheritance. In so doing, he deceived Baillergeau, filed a false statement with the court, entered into a fraudulent conveyance, and misused his escrow account to shield funds from Baillergeau and other judgment creditors. Not only did he deprive Baillergeau of the share of the proceeds from the sale of their mother's home, but he converted the funds for his own use. While acknowledging his obligation to repay Baillergeau, the respondent is paying her only what he receives in monthly social security payments, a payment level so low that it is unlikely that Baillergeau will live long enough to see the debt satisfied. The respondent's motives were both venal and paternalistic. He acted in his own self-interest and clearly took advantage of Baillergeau and her lack of education. He violated his fiduciary duty as administrator of Kathryn's estate. Beyond the respondent's misconduct surrounding the handling of Kathryn's estate, the respondent ignored wholesale the rules governing attorney trust accounts, his most egregious violation being the use of his escrow account as a shield against Baillergeau as a judgment creditor and other creditors as well. The respondent's feigned ignorance of the rules is belied by his possession of knowledge sufficient to use his escrow account as a shield. The respondent's ignorance of the rules is inexplicable and inexcusable given the fact that he is no novice and is a certified public accountant.
Under the totality of the circumstances, we find that a disbarment is warranted.
SCHEINKMAN P.J., MASTRO, RIVERA, DILLON and MALTESE, JJ., concur.
ORDERED that the petitioner's motion to confirm the Special Referee's report is granted; and it is further,
ORDERED that the respondent, Laurence B. McMillan, admitted as Laurence Benet McMillan, is disbarred, effective immediately, and his name is stricken from the roll of attorneys and counselors-at-law; and it is further,
ORDERED that the respondent, Laurence B. McMillan, admitted as Laurence Benet McMillan, shall comply with this Court's rules governing the conduct of disbarred or suspended attorneys (see 22 NYCRR 1240.15); and it is further,
ORDERED that pursuant to Judiciary Law § 90, effective immediately, the respondent, Laurence B. McMillan, admitted as Laurence Benet McMillan, shall desist and refrain from (1) practicing law in any form, either as principal or as agent, clerk, or employee of another, [*9](2) appearing as an attorney or counselor-at-law before any court, Judge, Justice, board, commission, or other public authority, (3) giving to another an opinion as to the law or its application or any advice in relation thereto, and (4) holding himself out in any way as an attorney and counselor-at-law; and it is further,
ORDERED that if the respondent, Laurence B. McMillan, admitted as Laurence Benet McMillan, has been issued a secure pass by the Office of Court Administration, it shall be returned forthwith to the issuing agency, and the respondent shall certify to the same in his affidavit of compliance pursuant to 22 NYCRR 1240.15(f).
ENTER:
Aprilanne Agostino
Clerk of the Court